**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JUAN I. BARRETO-BARRETO, JUAN F. BARRETO-GINORIO, GLORIMAR BARRETO-GINORIO, JUAN M. BARRETO-GINORIO, RAMON L. BARRETO-GINORIO, NELSON RAMOS-IRIZARRY, CARMELO RIVERA-RIVERA, IVAN ROSA-TOLEDO,<br>　　　Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　　Respondent. | Civil Nos. 06-1836 (PG);<br>06-1837; 06-1838;<br>06–1839; 06-1840;<br>06-1871; 06-1963;<br>06-1986 |

**ORDER**

Pending before the Court are eight motions seeking to vacate or set aside Petitioners' sentences pursuant to 28 U.S.C. § 2255[1]. Petitioners argue the sentences awarded as a result of their pleading guilty to violating 18 U.S.C. § 1014, which makes it a federal crime to knowingly make any false statement or report for the purpose of influencing in any way the action of the Secretary of Agriculture acting through the Farmers Home Administration or successor agency, are unconstitutional. The government filed a response in opposition[2]. For the following reasons Petitioners' motions are hereby **denied**.

Petitioners each pled guilty to violating 18 U.S.C. § 1014 by knowingly and willfully making false statements or reports for the purposes of influencing the actions of the Secretary of Agriculture, acting through the Farm Service Agency (the successor

---

[1] Dkt. No. 4 in lead case. All eight petitioners have filed identical motions in their respective cases. Though there are nine related cases pending in this District, the presiding judges on the captioned eight cases have consented to consolidation. These eight cases having been consolidated for the purposes of resolving the legal issues addressed herein, this Order shall apply to all Petitioners.

[2] Dkt. No. 7 in lead case.

agency to the Farmers Home Administration) and are currently serving terms of supervised release as part of their sentences.  All of the criminal acts took place prior to October 22, 1999.  Petitioners now argue that the statute was not applicable to the Farm Service Agency prior to October 22, 1999, when it was first amended to include the term "successor agency".  *See* Pub. L. 106-78, Title VII, § 767, 113 Stat. 1174.  They maintain that prior to that date the statute only encompassed false statements or reports made through the Farmers Home Administration and not its successor agency, the Farm Service Agency.  Under this theory, a false statement made to the Farm Service Agency prior to October 22, 1999 did not qualify as a violation of 18 U.S.C. § 1014 and thus Defendant's acts were not criminal when they were committed.

In arguing that 18 U.S.C. § 1014 does cover the conduct charged, the government cites this Court's recent opinion in *United States v. Alfonzo-Reyes*, 410 F. Supp. 2d 54 (D.P.R. 2006).  The Court sees no reason to depart from this ruling.  The Farm Service Agency was created during a 1994 reorganization to incorporate programs from several agencies, including the Agricultural Stabilization and Conservation Service, the Federal Crop Insurance Corporation (now a separate Risk Management Agency), and the Farmers Home Administration.  Acting as an umbrella agency, the Farm Service Agency assumed all purposes and objectives previously attributed to the Farmers Home Administration. *See* 7 U.S.C. § 6932.

18 U.S.C. § 1014 forbids "making false statements to induce an agency of the government structured under the governing head of the Department of Agriculture to lend money to make crops.  The Farm Service Agency is without contradiction an agency of the Department of Agriculture and functions to make emergency loans to farmers in need." *Alfonso-Reys* at 56 (internal citations omitted).  The purpose of the statute is to protect federally affiliated lenders from fraudulent loan applications. *Id. (citing* Senate Report No. 1078, U.S. Code & Admin. News 2519, 2522-23 (1964)).  Despite the statute omitting the term "successor agency" from the period between 1994 when the successor agency was created and October 1999 when the amendment became effective, it is apparent Congress did not intend for fraud committed during that period to be legalized.

Petitioners argue that criminalizing their behavior prior to the 1999 amendment violates the *ex post facto* clause of the United States Constitution by punishing acts that were not criminal at the time when they were committed. However, merely changing the name of the relevant agency did not change its status as a federally affiliated lender nor did it alter its subjectability to the jurisdiction of the Secretary of Agriculture. *Id.* The amendment did not make criminal or punishable any act that was innocent when committed, did not aggravate any crime previously committed, did not inflict greater punishment than was previously attributable to the act at the time it was committed, and did not alter the rules of evidence applicable to the offender's conviction. *Stogner v. California*, 539 U.S. 607, 612 (2003); *Calder v. Bull,* 3 U.S. 386, 390 (1798). Absent any evidence that the amendment was designed to effect substantive changes to the statute, the most plausible explanation for the revision is that it was simply intended to bring the language of the statute up to date with the 1994 changes to the agency's name. "Cases construing changes in statutory language tend to rely in part on evidence of congressional intent or at least attention to the change in deciding whether to give the change its literal effect." *United States v. Falvey*, 676 F.2d 871, 875 (1st Cir. 1982). *In the absence of these factors, courts are not bound to read a statute literally in a manner entirely at odds with its history and apparent intent. Id.* (Emphasis added.)

The court is mindful of the fact that criminal statutes are normally interpreted narrowly. *Falvey*, 676 F.2d at 877. Nevertheless, "provided that conduct is of a sort widely known among the lay public to be criminal -- and efforts to obtain money by false pretenses are in that category -- a person is not entitled to clear notice that the conduct violates a particular criminal statute. It is enough that he knows that what he is about to do is probably or certainly criminal." *United States v. White*, 882 F.2d 250, 252 (7th Cir. 1989). It is therefore merely a detail, and not outcome determinative, that the agency identified in the statute was incorporated into a successor agency without the term "successor agency" being immediately added to the statute. Petitioners knew, or should have known, that their fraudulent acts were criminal at the time they were committed.

Though this issue has not yet been addressed by the First Circuit, caselaw from

4

other courts supports our conclusion. In *Blum v. United States,* 212 F.2d 907 (5th Cir. 1954), the defendant was convicted of violating 18 U.S.C. § 1012 as it applied to the Public Housing Administration.  Like Petitioners here, Blum argued the statute was inapplicable to his case on the ground that the act under which the indictment was returned was not passed until October 31, 1951, and, since the violations charged in those counts transpired prior to that time, prosecution on those counts would be violative of the ex poste facto clause of the Constitution.  In rejecting this argument, the Fifth Circuit stated that

> the act of October 31, 1951 was merely an amendment to section 1012, indicating the change of the name of the United States Housing Authority to Public Housing Administration. Although the name of that agency had previously been changed, it was not until October, 1951, that section 1012, which provided the criminal sanctions [] involved, was amended solely for the purpose of reflecting this change of name. This amendment [did not violate ex post facto principles]. Blum was not prejudiced by the 1951 amendment and his situation was in no way adversely affected by it, either prospectively or retrospectively. The amendment, being one of form only, did not give rise to the principles contended for by appellant.

*Blum* at 911.

The Second Circuit, in *United States v. Sabatino,* 485 F.2d 540 (2nd Cir. 1973), upheld the defendant's conviction under 18 U.S.C. § 1014 based on even more attenuated facts than are present in the instant matter.  Sabatino was found guilty of violating the provision of section 1014 making it a crime to make a false statement for the purposes of influencing any bank whose deposits are insured by the  Federal Deposit Insurance Corporation (FDIC).  The court held that although the defendant made statements for the purposes of obtaining a car loan from a dealer, who then filed the loan application with a state bank, he was nevertheless guilty because the state bank was indeed insured by the FDIC.  The *Sabatino* court determined that it was sufficient that the defendant knew it was a bank he was intending to influence and it was not necessary for him to know whether the bank was FDIC insured.  In the instant matter, there is no intermediary present–the Farmers Home Administration and the Farm Service Agency are essentially the same agency acting under a different name.  It is sufficient that Petitioners were ultimately intending to influence the Secretary of Agriculture through this agency.

Accordingly, Petitioners motions for relief pursuant to 28 U.S.C. § 2255 are hereby

denied.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 25, 2007.

S/ JUAN M. PEREZ-GIMENEZ

Senior United States District Judge